**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**PRINCIPAL LIFE INSURANCE COMPANY,**

                            **Plaintiff,**

             **-against-**

**THE ERNO ALTMAN INSURANCE TRUST,**
**dated February 26, 2008, et al.,**

                          **Defendants.**
-------------------------------------------------------------------x

                                  **REPORT AND**
                                  **RECOMMENDATIONS**

                                  **10-CV-1936 (DLI)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Plaintiff Principal Life Insurance Company ("plaintiff") seeks to rescind and void a policy insuring the life of defendant Erno Altman ("Altman"), held by defendant "Erno Altman Insurance Trust" (the "Trust"), on the ground that it was procured through fraud for the benefit of investors lacking a valid insurable interest, as part of a "stranger-owned life insurance" scheme. See generally Complaint (Apr. 29, 2010) ("Compl."), E.C.F. Docket Entry ("D.E.") #1. The defendants -- Altman, the Trust, and trustees Eva Beilus and Carl Caller (collectively, "defendants") -- move for summary judgment, contending that the lawsuit is untimely in that it was not filed within the two-year "contestability period" provided by the insurance policy and required by New York law. See Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Feb. 7, 2011) ("Def. Mem."), D.E. #26; Plaintiff's Brief in Opposition to Motion for Summary Judgment (Feb. 7, 2011) ("Pl. Mem."), D.E. #30; Reply Brief in Further Support of Defendants' Motion for Summary Judgment (Feb. 7, 2011) ("Def. Reply Mem."), D.E. #32. On May 2, 2011, the Honorable Dora L. Irizarry referred the motion to the undersigned magistrate judge for a report and recommendation. As

the record before the Court establishes that the instant action was timely filed, the Court respectfully recommends that defendants' motion be denied.

## BACKGROUND

Plaintiff filed the instant lawsuit on April 29, 2010, seeking to rescind and void a life insurance policy procured by Erno Altman in the name of the "Erno Altman Insurance Trust" in 2008. See generally Compl. Plaintiff alleges that the insurance policy was procured as part of a "stranger-owned life insurance" (sometimes termed "stranger-originated life insurance" or "STOLI") scheme, in which life insurance policies are purchased for the purpose of resale to investors. Id. ¶¶ 2, 14-21. According to plaintiff, the application, signed by Altman and the original trustee, Eva Beilus, contained various misstatements, such as fraudulent overstatements of Altman's wealth in order to justify his acquisition of a $20 million life insurance policy intended for the investment market. Id. ¶¶ 41, 50. Plaintiff further alleges that the policy is void *ab initio* under New York insurance law because the policyholder had no valid insurable interest in Altman's life. Id. ¶ 43.

Defendants move for summary judgment, contending that the lawsuit is time-barred under the terms of the policy's incontestability clause. Def. Mem. at 4-5. The clause, required under New York law,[1] provides, in relevant part: "With respect to statements made in the initial application(s) for this policy, [the insurer] will not contest this policy after the

_____

[1] See N.Y. Ins. L. § 3203(a)(3) ("All life insurance policies . . . delivered or issued for delivery in this state, shall contain in substance [a provision requiring] . . . that the policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue . . . ."). The parties do not dispute that New York insurance law governs this dispute. See Def. Mem. at 4; see generally Pl. Mem. passim.

Insured has been alive for two years after the Policy Date." See Flexible Premium Universal Life Insurance Policy ("Policy"), D.E. #28-3 at 23.[2] The "Policy Date" is defined as a "date shown on the current Data Pages." Policy, D.E. #28-3 at 10. The data pages accompanying the Policy originally offered to and executed by Altman reflect a Policy Date of April 17, 2008. See Data Pages ("Def. Data Pages" or "April 17 Data Pages"), D.E. #25 at 6. Defendants therefore claim that the Policy became incontestible on April 17, 2010, rendering this lawsuit (filed April 29, 2010) untimely. Def. Mem. at 5.

Plaintiff argues that the Policy did not come into effect on April 17, 2008; plaintiff points to several unfulfilled conditions precedent cited in the Policy, see Pl. Mem. at 18-20, and to an Amendment to Application executed by Altman on April 29, 2008. See Amendment, D.E. #28-5 at 16. That form, which is part of the contract under the Policy's integration clause, see Policy, D.E. #28-3 at 23, states: "CAUTION[:] Coverage does not become effective until this Amendment form is signed below and the full first premium received (if not

_____

[2]  The parties submit substantially identical versions of the Policy, except that the version proffered by plaintiff contains completed versions of several forms left incomplete in the version proffered by defendants. Compare Supplemental Statement ("Supplemental Statement"), D.E. #28-5 at 20 (version proffered by plaintiff as Exhibit V), with Supplemental Statement, D.E. #25 at 27 (version proffered by defendants); compare Amendment to Application ("Amendment"), D.E. #28-5 at 16 (version proffered by plaintiff as Exhibit T), with Amendment to Application, D.E. #25 at 28 (version proffered by defendants). Defendants do not dispute the authenticity of either completed form, see, e.g., Def. Reply Mem. at 5-6, and the Court accordingly cites to the completed versions proffered by plaintiff. The parties dispute whether the Policy should be construed to include a set of "data pages" that plaintiff transmitted to Beilus, as trustee, on May 5, 2008. See infra pp. 14-20.

The docket entry numbers cited in this opinion refer to those numbers stamped electronically at the top of the page as a result of ECF docketing. Page citations preceded by docket entry document numbers likewise refer to ECF-designated pagination, rather than to pagination within the original documents.

already submitted)." Amendment, D.E. #28-5 at 16. Plaintiff contends that both occurred on April 29, 2008. See id.; Check from Erno Altman Insurance Trust to Principal Life (Apr. 29, 2008) ("Check"), D.E. #28-5 at 31. Pointing to a Policy provision precluding an effective date on the 29th, 30th or 31st of any month, see Policy, D.E. #28-3 at 10, plaintiff contends that the Policy came into effect (and the two-year contestability period began to run) on May 1, 2008, a date memorialized as the "Policy Date" in data pages sent by plaintiff to the Trust on May 5, 2008. Pl. Mem. at 18-23; see Data Pages ("Pl. Data Pages" or "May 1 Data Pages"), D.E. #28-3 at 5.[3]

Defendants counter that the data pages bearing the May 1, 2008 date are a legal "nullity," see Def. Mem. at 8, excluded from the contract pursuant to its integration clause, which provides: "This policy, the attached application(s) and riders, any amendments to the application(s), any adjustment and reinstatement application(s), and the *current Data Pages* make up the entire contract." Policy, D.E. #28-3 at 23 (emphasis added). Defendants argue that the term "current" bars inclusion of the May 1 Data Pages, which did not exist at the time the contract came into effect. Def. Mem. at 8. Plaintiff responds that the contract, an "adjustable" life insurance policy allowing the insured to change aspects of the agreement as needs change, allows for the issuance of new data pages, and that the most recent, up-to-date, or "current" data pages become a part of the contract. See Policy, D.E. #28-3 at 6, 23; Pl. Mem. at 20-21. Accordingly, plaintiff asks the Court to look to the May 1, 2008 Policy Date reflected in the later-issued Data Pages, see Pl. Data Pages, D.E. # 28-3 at 5, a date that would

---

[3] The data pages proffered by each party are substantially identical but for the relevant dates.

render this lawsuit timely.  Pl. Mem. at 22.

Plaintiff also argues that claims of fraud and/or lack of an insurable interest are not subject to incontestability defenses, Pl. Mem. at 8, and that defendants, who did not object to the May 1, 2008 Policy Date and who paid premiums based on that later date, should be equitably estopped from asserting a contrary date.  <u>Id</u>. at 23.  Finally, plaintiff contends that defendant Carl Caller, the successor trustee whose affirmation defendants use to authenticate all of the evidence underlying their motion, <u>see</u> Affirmation of Carl Caller in Support of Motion for Summary Judgment ("Caller Aff."), D.E. #25, lacks personal knowledge of the relevant facts; plaintiff thus asks the Court to strike the Caller Affirmation and deny defendants' motion.  Pl. Mem. at 3.

<u>DISCUSSION</u>

**I.     WHETHER THE COURT SHOULD STRIKE THE AFFIRMATION OF CARL CALLER FOR LACK OF PERSONAL KNOWLEDGE**

The Court first addresses plaintiff's argument that the Court should strike the Affirmation of Carl Caller on the ground that Caller has no personal knowledge of the relevant facts.  <u>See</u> Pl. Mem. at 4-5 ("Caller was not involved in the application for the Policy.  He was not the trustee of the Altman Trust at the time the conditionally-offered Policy was delivered to then trustee, Eva Beilus, or at the time the updated Data Pages were delivered to her.").  Because defendants rely on the Caller Affirmation to authenticate all of the evidence supporting their motion for summary judgment, <u>see</u> Caller Aff. ¶ 3, plaintiff argues that the motion must be denied.  Pl. Mem. at 6.

"An affidavit or declaration used to support or oppose a motion must be made on

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Second Circuit has reversed grants of summary judgment where the moving party depended on an attorney affidavit not founded on personal knowledge. See, e.g., United States v. Bosurgi, 530 F.2d 1105, 1111-12 (2d Cir. 1976). But the circuit court has also qualified the rule somewhat: affidavits not based on personal knowledge may not be used to support (or defeat) summary disposition of a claim, "except as to matters that [are] undisputed . . . ." Rosenberg v. Silver, 762 F.2d 255, 256 (2d Cir. 1985) (citing Bosurgi, 530 F.2d at 1111-12). Plaintiff has identified no disputed question of fact germane to this motion; rather, plaintiff challenges defendants' legal conclusion that the relevant Policy Date is April 17, 2008. See Response to Defendants' Statement of Material Facts and Plaintiff's Counter-Statement of Material Facts (Feb. 7, 2011) ¶ 4, D.E. #31. Nor has the Court identified any aspect of this motion that is subject to factual dispute, or that requires any discovery.[4] Accordingly, Caller's lack of personal knowledge does not preclude consideration of defendants' submission with regard to undisputed facts.

## II.     WHETHER PLAINTIFF'S CLAIMS ARE SUBJECT TO AN INCONTESTABILITY DEFENSE

Plaintiff contends that, in the event that the Court concludes that the contestability period began to run on April 17, 2008, the Court should nevertheless deny defendants' motion because "claims of STOLI, lack of insurable interest, and fraudulent misrepresentations are not

---

[4] Therefore, the Court rejects plaintiff's suggestion that defendants' motion is "premature." Pl. Mem. at 1-2, 6-7.

subject to incontestability defenses." Pl. Mem. at 2. The New York legislature has provided for no such exceptions to the statutory incontestability provision; New York's courts have not read exceptions into the statute, nor does the instant Policy provide for one. As such, the claims herein are not exempt from an incontestability defense.

Section 3203(a)(3) of New York's Insurance Law requires that all life insurance policies provide "that the policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue . . . ." N.Y. Ins. L. § 3203(a)(3). The statute does not provide for exceptions for claims of fraud or lack of an insurable interest. Id.; compare N.Y. Ins. L. § 3216(d)(1)(B) (providing, with regard to disability and health insurance policies, an exception to the incontestability defense for claims relating to "fraudulent misstatements"). Incontestability clauses were first introduced by "life insurance companies to assuage concerns by the public that the companies were unjustly avoiding payment on claims" by waiting to challenge policies until after the insured had died. New England Mut. Life Ins. Co. v. Doe, 93 N.Y.2d 122, 128 (1999). An incontestability clause "limits the period of time that the carrier has to investigate the veracity of the policyholder's statements, after which it may not contest the policy except on certain stated grounds, usually nonpayment of premiums . . . . In the words of Justice Oliver Wendell Holmes, 'The object of the [incontestability] clause is plain and laudable -- to create an absolute assurance of the benefit, as free as may be from any dispute of fact except the fact of death, and as soon as it reasonably can be done.'" Id. (quoting Northwestern Mut. Life Ins. Co. v. Johnson, 254 U.S. 96, 101-02 (1920)) (modification in original). New York was the first state to require incontestability clauses; the legislative intent was to encourage public confidence in insurance

products and to reduce litigation while maintaining a reasonable period in which the carrier may "investigate statements made by the policyholder in procuring the policy." Id. at 128-29.

## A. Challenges Based on Lack of Insurable Interest

The New York Court of Appeals has explicitly addressed the question of whether an insurer may challenge the policyholder's insurable interest after the expiration of the contestability period. See New England Mut. Life Ins. Co. v. Caruso, 73 N.Y.2d 74 (1989). Reviewing the legislative history of section 3203(a)(3), id. at 80, and balancing the policies underlying insurable interest requirements with the predictability interests promoted by incontestability clauses, id. at 82, the Court of Appeals concluded that, under New York law, "passage of the incontestability [sic] period bars the insurer from thereafter asserting the policyholder's lack of an insurable interest." Id. at 77.[5]

Plaintiff herein presents a nuanced picture of the facts of that case, and urges, in essence, that this Court re-evaluate the policy considerations addressed by the Caruso Court. Pl. Mem. at 10-11. Plaintiff cites a case that has done so: in Settlement Funding, LLC v. AXA Equitable Life Insurance Co., No. 06 CV 5743(HB), 2010 WL 3825735, at *5 (S.D.N.Y. Sept. 30, 2010), Judge Harold Baer, Jr., of the Southern District of New York, denied the policyholder's motion for summary judgment on the incontestability issue, noting the mounting concern over stranger-owned life insurance schemes and concluding that "the

---

[5] In Caruso and other cases, courts have mistakenly referred to the expiration of the period of contestability, and the start of the incontestable period, as the "passage of the incontestability period." Properly viewed in context, the courts' intended meaning is clear.

interests balanced by the <u>Caruso</u> court twenty-plus years ago carry different weights today."[6]

This Court declines to revisit the policy analysis already performed by the New York Court of Appeals in its application of New York law. As the <u>Settlement Funding</u> case indicated, concern over STOLI policies (or, as they were previously labeled, "wager" policies) has been a feature of insurance law for more than a century. <u>See</u> <u>Settlement Funding</u>, 2010 WL 3825735, at *5 (citing <u>Warnock v. Davis</u>, 104 U.S. 775, 779 (1881)). Though litigation over STOLI schemes has become widespread, New York's highest court has not revisited <u>Caruso</u>; indeed, as recently as November 2010, several months after the decision in <u>Settlement Funding</u>, the Court of Appeals, in a STOLI case, declined to reopen the question of whether an insurer may challenge an insurable interest after the contestability has period elapsed. <u>Kramer v. Phoenix Life Ins. Co.</u>, 15 N.Y.3d 539, 547-48 nn.3-4 (2010) (in declining to expand the scope of the question certified by the Second Circuit, the New York Court of Appeals observed: "Notably, [the] District Court determined that the insurers could not attempt to void the policies, as they had been issued over two years earlier and so are incontestible[.]") (citing N.Y. Ins. L. § 3203(a)(3) and <u>Caruso</u>, 73 N.Y.2d at 538); <u>see generally</u> <u>Kramer v. Lockwood Pensions Servs., Inc.</u>, 653 F.Supp.2d 354, 376-78 (S.D.N.Y. 2009). As it stands, New York law requires life insurance carriers to assert within two years challenges to the policyholder's insurable interest; this Court deems it inappropriate to judicially rewrite the statute when New York's Court of Appeals has declined to do so.

_____

[6] In that case, the jury ultimately found that the incontestability clause barred the insurer from challenging the policy's validity. <u>Settlement Funding, LLC v. AXA Equitable Life Ins. Co.</u>, No. 06 CV 8685(HB), 2011 WL 1097635, at *1 (S.D.N.Y. Mar. 21, 2011).

### B. Challenges Based on Claims of Fraud

The Court of Appeals has also held, in summarily disposing of an insurer's appeal in the context of a STOLI-type scheme, that the expiration of the contestability period bars the insurer from asserting claims of fraud. See Columbian Nat'l Life Ins. Co. v. Hirsch, 267 N.Y. 605 (1935) (per curiam); accord Berkshire Life Ins. Co. v. Weinig, 290 N.Y. 6, 10 (1943) (noting that, absent express exception for fraud written into incontestability clause in disability policy, that clause is "directed against a claim that the contract has been obtained by fraudulent misrepresentations . . . and absolutely bars rescission after the period within which liability may be contested"); Ilyaich v. Bankers Life Ins. Co. of N.Y., 849 N.Y.S.2d 595, 596-97 (2d Dep't 2008); see also Reliastar Life Ins. Co. of N.Y. v. Leopold, 745 N.Y.S.2d 810, 812 (N.Y. Sup. Ct. 2002) ("It is well settled that once the incontestable period [sic] has elapsed, allegations that an insured procured the policy through fraud will not support a claim to void or rescind the policy."). This long-established principle is reinforced in more recent dicta of the New York Court of Appeals. In Caruso, in summarizing the insurer's argument with regard to insurable interest claims, the Court of Appeals presented fraud as a clear-cut example of a claim that may be time-barred:

> [The insurer's] argument follows traditional reasoning: life insurance policies issued to persons lacking an insurable interest in the life of the insured are void from inception because of statutory prohibitions and because they violate public policy concerns against wagering contracts. Since no contract exists, the expiration of the contestability period cannot operate to create one. To be distinguished are policies voidable because they constitute private wrongs against an individual insurance company -- for example, policies issued upon fraudulent misrepresentations. In such cases, if the insurer fails to challenge the misrepresentation before expiration of the incontestability period [sic], the obligation becomes absolute at maturity.

Caruso, 73 N.Y.2d at 76.

The Settlement Funding court, distinguishing Caruso, concluded that the expiration of the contestability period did not absolutely bar a claim of fraud, and observed that incontestability clauses in life insurance policies are "less revered" than those in disability and health insurance policies. 2010 WL 3825735, at *4. The New York Insurance Law expressly permits insurers to include a fraud exception in incontestability clauses contained in disability and health insurance policies, see N.Y. Ins. L. § 3216(d)(1)(B), but not in life insurance policies. N.Y. Ins. L. § 3203(a)(3). The ability to incorporate such exceptions into disability insurance policies led the Court of Appeals, in New England Mutual Life Insurance Co. v. Doe, to refuse to read a fraud exception into a disability insurance policy that did not expressly include one. 93 N.Y.2d at 131. The Doe Court remarked: "We are not insensitive to the carrier's concern that the policyholder's interpretation may encourage fraud. Were we faced with a choice between fraud and the statutory design, a far more difficult case would be presented. It would be difficult for us to conclude that the Legislature knowingly enacted a statute that would encourage fraud." Id. at 130-31.

While that dictum in Doe could be construed to support the argument for judicial imposition of a fraud exception in connection with life insurance policies' incontestability provisions, this Court respectfully disagrees with the conclusion reached by the Settlement Funding court -- i.e., that the absence of a statutory exception for fraud allows a court to engraft one onto such policies. Rather, this Court concludes that the New York legislature meant what it said: life insurance policies "shall be incontestable" after two years. N.Y. Ins.

L. § 3203(a)(3).  As the Court of Appeals acknowledged in <u>Caruso</u>, the fact that the legislature authorized exceptions to incontestability in other types of insurance policies but not in life insurance policies means that other insurance policies may be void *ab initio* under such exceptions to incontestability but that life insurance policies are not.  73 N.Y.2d at 80-81.[7]

This Court shares the <u>Caruso</u> Court's conviction that, "if [the New York legislature] had intended the same result for life insurance policies it could have stated so."  <u>Id</u>. at 81.  Fraud claims are not a marginal concern with regard to incontestability clauses.  As the Court in <u>Doe</u> noted, insurance companies first introduced such clauses to assure consumers that companies would not belatedly and unfairly challenge policies on the basis of "misstatement[s] made by the insured" in the application.  93 N.Y.2d at 128.  These clauses are designed precisely to "limit[] the period of time that the carrier has to investigate the veracity of the policyholder's statements . . . ."  <u>Id</u>.  This Court considers it unlikely that the New York legislature would enact a general incontestability provision without contemplating that it would apply to fraud claims.

As the New York Court of Appeals has suggested, such a result -- time-barring fraud claims after two years -- does not "condone fraud"; rather, like statutes of limitation, it balances the need to deter insurance fraud against the need to settle the parties' expectations and avoid belated litigation.  <u>Weinig</u>, 290 N.Y. at 10 (citing <u>Wright v. Mutual Benefit Life Ass'n of Am.</u>, 118 N.Y. 237, 243 (1890)).  An incontestability clause "recognizes fraud and all other defenses but it provides ample time and opportunity" for the insurer to investigate and

---

[7]  In any event, the incontestability provision in the Policy at issue here contains no such exception for fraud.  <u>See</u> Policy, D.E. #28 at 23.

assert fraud claims.  Id.  Such a clause places on the insurer the "burden . . . to investigate [a

dispute] in a timely manner or ignore the matter at its peril."  Caruso, 73 N.Y.2d at 82.

Balancing the conflict between an insurer's need to deter fraud and an insured's need for

confidence in an insurance policy is a matter best left to the state legislature.

As neither section 3203(a)(3) of the Insurance Law nor the instant Policy provides

exceptions to the incontestability period for fraud or insurable interest challenges, the

incontestability period applies to plaintiff's claims and plaintiff's arguments to the contrary are

unavailing.

## III.  WHETHER THE ACTION WAS TIMELY COMMENCED IN LIGHT OF THE CONTESTABILITY PERIOD

Having concluded that the claims asserted in this lawsuit are subject to an

incontestability defense, the Court now turns to the substance of that defense.  Each party

argues that a different Policy Date applies; the Policy Date, in turn, triggers the start of the

incontestability period.  See Policy, D.E. #28 at 23 (". . . [The insurer] will not contest this

policy after the Insured has been alive for two years after the Policy Date.").  This action was

commenced on April 29, 2010.  Defendants argue that the Policy Date was April 17, 2008, the

date reflected in the Data Pages bound to the Policy first offered to the insured, thereby

rendering this lawsuit untimely.  See Def. Mem. at 2, 5-8.[8]  Plaintiff argues that the Policy

---

[8]  Defendants do not dispute that the lawsuit was timely filed under section 3203(a)(3), which
requires that policies be "incontestable after *being in force* during the life of the insured for a
period of two years from its date of issue."  N.Y. Ins. L. § 3203(a)(3) (emphasis added).
Rather, defendants contend that the parties are free to shorten the period of contestability, see
Def. Mem. at 11 (collecting cases), and that, in this case, the parties did so by tying the period
of contestability to the "Policy Date."  See id. at 12.  Plaintiff argues, in essence, that the

(continued...)

Date was May 1, 2008, the date reflected in Data Pages subsequently sent to trustee Beilus after the insured completed the requirements for coverage to come into effect, and that therefore the action was timely commenced.  See Pl. Mem. at 2, 22.  As discussed below, plaintiff is correct that the Policy provides for a Policy Date of May 1, 2008.  Since the lawsuit was filed within the contestability period, the Court respectfully recommends that defendants' summary judgment motion be denied.

### A.    Whether New York Insurance Law Bars Consideration of the May 1 Data Pages

Generally speaking, New York law requires that "[e]very policy of life, accident or health insurance . . . shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued."  N.Y. Ins. L. § 3204(a)(1).  Defendants contend that this principle renders the subsequently created May 1 Data Pages a "nullity."  Def. Mem. at 10.  New York law does not compel such a result, however.  Section 3203(a)(4) of New York's Insurance Law requires that life insurance policies issued in the state contain an integration clause requiring that "the policy, together with the application therefor if a copy of such application is attached to the policy when issued, shall constitute the entire contract between the parties . . . ."  N.Y. Ins. L. § 3203(a)(4).  But the same subsection goes on to provide an exception for life insurance policies of the kind at issue here:

> [B]ut in the case of policies that provide that the death benefit or other
> policy provisions may be changed by written application or by the written

---

[8](…continued)
"Policy Date" coincides with the effective date of coverage.  See Pl. Mem. at 19-22.

> notice of exercise of one or more options provided in the policy, or automatically by the terms of the policy, the policy may also contain a provision that when such written application or notice of exercise of an option is accepted by the insurer or a notice of any change is issued by the insurer and, in each case, a copy of such application or notice is returned by mail or delivered to the policyholder at the policyholder's last post office address known to the insurer, such application or notice shall become part of the entire contract between the parties[.]

N.Y. Ins. L. § 3203(a)(4).

The Policy in this case is a "universal life insurance policy" of the type contemplated in section 3203(a)(4), in that it allows for changes in "the death benefit or other policy provisions . . . [on] written application or by the written notice of exercise of one or more options provided in the policy, or automatically by the terms of the policy . . . ." Id. This much is clear from the Policy's first page, which begins, "FLEXIBLE PREMIUM UNIVERSAL LIFE INSURANCE POLICY. Adjustable death benefit." Policy, D.E. #28-3 at 2. The April 17, 2008 Data Pages proffered by defendants reiterate this feature of the policy: "This policy is adjustable. If it is adjusted, we will send you new Data Pages." Id. at 6.

Pursuant to section 3203(a), a life insurance policy allowing for such adjustments may "contain a provision that when such written application . . . is accepted by the insurer or a notice of any change is issued by the insurer" and notice is mailed to the policyholder, "such application or notice shall become part of the entire contract between the parties." N.Y. Ins. L. § 3203(a)(4). Plaintiff included such a provision, allowing for adjustments memorialized by new data pages, to be sent to the insured and "made a part of [the] policy." Policy, D.E. #28-3 at 6.

The aforesaid statutory section appears to be at odds with another provision cited by

defendants, which provides that "life, accident or health insurance" policies "shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued." N.Y. Ins. L. § 3204(a)(1). To the extent that this general statutory provision contradicts the specific terms of section 3203(a)(4) authorizing changes to policy provisions upon notice to the policyholder, the latter statute controls: it reflects the legislature's choice, in 1982, to modify the pre-existing, general Insurance Law and to carve out an exception allowing for adjustable life insurance policies. See generally Legislative History, D.E. #29-2; Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 228-29 (1957) ("However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment. Specific terms prevail over the general in the same or another statute which otherwise might be controlling.") (internal quotations and ellipses omitted); United States v. Estate of Romani, 523 U.S. 517, 532 (1998) (concluding that the "later," "more specific" statute controls). Accordingly, the statutes at issue here do not bar consideration of later-issued changes to the Policy's "death benefit or other policy provisions," to the extent that those changes are contemplated in the Policy and so long as notice is sent "by mail or delivered to the policyholder at the policyholder's last post office address known to the insurer." N.Y. Ins. L. § 3203(a)(4).

**B. Whether the Policy's Integration Clause Bars Consideration of the May 1 Data Pages**

Defendants further argue that the Policy's integration clause precludes consideration of the May 1 Data Pages. The clause reads: "This policy, the attached application(s) and riders,

any amendments to the application(s), any adjustment and reinstatement application(s), and the *current Data Pages* make up the entire contract." Policy, D.E. #28-3 at 23 (emphasis added).

Defendants argue that the term "current" must mean "[b]elonging to the present time," that is, it refers to the Data Pages in existence at the time the Policy was first physically bound on April 17, 2008 and signed on April 29, 2008. Def. Mem. at 9. But defendants actually cite a definition of the word "current" contrary to their position: "most recent; up-to-date." Id. at 9 (citing The Collins English Dictionary -- Complete and Unabridged, 2003). If the term "current data pages" is read to mean "the up-to-date data pages," it is clear that the integration clause would not exclude a later-issued set of data pages, to the extent that those data pages constitute the most recent set issued during the life of the Policy.

Presumably recognizing this possibility, defendants offer a fallback position: if the term "the current Data Pages" may be read to mean either "the Data Pages now in existence" or "the up-to-date Data Pages," the Court must construe the contract *contra proferentem* -- against the drafter -- and apply the interpretation most favorable to the insured. Def. Mem. at 6. This argument fails on two levels. Under New York law, the *contra proferentem* doctrine may be applied to interpret a provision the Court finds ambiguous; the Court determines, as a threshold matter, whether the terms are in fact ambiguous. See Morgan Stanley Grp. Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) ("[T]he initial interpretation of a contract is a matter of law for the court to decide. Part of this threshold interpretation is the question of whether the terms of the insurance contract are ambiguous.") (internal citations and quotations omitted). In this case, the integration clause is not ambiguous when read in light of

the entire agreement.  The agreement provides: "This policy is adjustable.  If it is adjusted, we will send you new Data Pages.  The Data Pages are to be attached to and made a part of this policy."  Policy, D.E. #28-3 at 6.  Defendants' interpretation of the integration clause would contradict this provision, by excluding the updated Data Pages from the integrated agreement.

Furthermore, the interpretation advocated by defendants would, in turn, render meaningless the agreement's myriad provisions allowing for adjustments in the Policy memorialized by the issuance of new data pages.  For example, the Data Pages reflect the Policy's "face amount."  Policy, D.E. #28-3 at 5.  The agreement sets forth a method for the insured to "request an increase or decrease in the face amount," id. at 21, and it provides that "[i]f [the Policy] is adjusted, we will send you new Data Pages."  Id. at 6.  The Data Pages also specify the current "death benefit option," id. at 5, which the insured may select from a list of choices.  Id. at 17-18.  "The option in effect is shown on the *current* Data Pages."  Id. at 17 (emphasis added).  Plaintiff cites myriad examples of other provisions indicating that changes to the Policy will trigger the issuance of updated data pages.  See Declaration of John E. John (Feb. 7, 2011) ¶ 16, D.E. #28 (citing examples).  Simply put, defendants' interpretation of the integration clause -- which would include in the agreement only the first set of Data Pages -- would render moot core aspects of the Policy by excluding from the agreement any changes to the Data Pages made at the insured's election.  As this is not a coherent or sensible reading of the integration clause, that clause's reference to the "current Data Pages" must be read to mean "the up-to-date Data Pages," Policy, D.E. #28-3, at 23, consistent with the use of the term "current Data Pages" elsewhere in the agreement to refer to

the data pages in effect after a change. See, e.g., id. at 17 ("The option in effect is shown on the *current* Data Pages.").[9]

"[A] provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." United States Fire Ins. Co. v. General Reins. Corp., 949 F.2d 569, 572 (2d Cir. 1991). For the reasons detailed above, that is not the case here. When properly read in light of the Policy's other provisions, the integration clause's reference to "current Data Pages" is unambiguous and means the most recent data pages. Since the provision is not ambiguous, consideration of extrinsic evidence is not appropriate, and the *contra proferentem* doctrine does not apply.[10] See, e.g., Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 88 n.7 ("[W]e have made clear that under New York law, courts should not

[9] Indeed, the New York legislature expressly contemplated that, in the case of adjustable life insurance policies, changes requested by the policyholder would reset the two-year period of contestability. See N.Y. Ins. L. § 3203(a)(3) (providing, in relevant part, that "if a policy provides that the death benefit provided by the policy may be increased, or other policy provisions changed, upon the application of the policyholder and the production of evidence of insurability, the policy with respect to each such increase or change shall be incontestable after two years from the effective date of such increase or change . . . .").

[10] In any event, even if there existed any ambiguity as to the meaning of the word "current" in the integration clause, such ambiguity would pose a factual question sufficient to preclude summary judgment for defendants. As the Second Circuit has noted, in construing an insurance contract, a court that "concludes that an insurance provision is ambiguous . . . may accept any available extrinsic evidence to ascertain the meaning intended by the parties . . . ." Morgan Stanley Grp., 225 F.3d at 275-76 (internal quotation omitted). If the Court were to view the instant integration clause as ambiguous, it would then look to extrinsic evidence as to the parties' intent; while the rule of *contra proferentem* would apply where such extrinsic evidence "does not yield a conclusive answer," id. at 276, the rule cannot obviate the need for factual inquiry in interpreting an ambiguous provision. And "when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment." LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005) (citation and internal quotation marks omitted).

resort to *contra proferentem* until after consideration of extrinsic evidence") (citing, e.g.,

Morgan Stanley Grp., 225 F.3d at 276; McCostis v. Home Ins. Co., 31 F.3d 110, 113 (2d

Cir. 1994)).

Neither New York Insurance Law nor the terms of the Policy's integration clause bars

consideration of Data Pages issued after the initial Policy.  Accordingly, the Court next turns

to the question of which set of Data Pages specifies the applicable Policy Date and therefore

defines the contestability period.

### C.    Whether the May 1 Data Pages Define the Contestability Period

Under the terms of the Policy's incontestability clause, the two-year period of

contestability is tied to the Policy Date.  See Policy, D.E. #28-3 at 23.  The parties dispute the

relevant Policy Date, which is fixed by the "current Data Pages."  Id. at 10.  Defendants

contend that under the terms of the Policy, the Data Pages in existence when the Policy was

first delivered determine the Policy Date (April 17, 2008, according to defendants) and thus

the end of the contestability period.  Def. Mem. at 7.  Plaintiff contends that the Policy Date is

the date reflected in the "current Data Pages," which in turn are adjusted to reflect the

effective date of the Policy -- or May 1, 2008, according to plaintiff.  See Pl. Mem. at 18-22.

The uncontradicted evidence proffered by plaintiff establishes, as a matter of law, that

defendants' construction of the Policy is unavailing, and that the Policy Date coincides with the

effective date of coverage.  As discussed below, the Policy contemplates several conditions

precedent to coverage which were not satisfied by April 17, 2008.  Instead, the insured

submitted an Amendment form on April 29, 2008.  See Amendment, D.E. #28-5 at 16.  The

terms of the Policy provide that such an amendment would result in a May 1, 2008 Policy

Date, the same date reflected in the May 1, 2008 Data Pages. Those Data Pages control; accordingly, the two-year contestability period began to run on May 1, 2008, and this lawsuit was timely filed on April 29, 2010.

The Policy contains several provisions governing its effective date. "[I]f a policy is issued as applied for with a premium deposit paid, policy coverage will become effective as of issuance." Life Insurance Application ("Application"), D.E. #28-4 at 9. If, on the other hand, the

> policy is issued as other than applied for or without a premium deposit
> . . . , then policy coverage is not effective . . . unless:
>
> > 1) A policy issued on this application has been physically delivered to and accepted by the owner and the first premium paid; and
> >
> > 2) At the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in [the] application . . . ; and
> >
> > 3) The . . . Acknowledgment of Delivery form is signed by [the applicant] . . . and dated at delivery.
>
> *If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy data pages.*

Id. (emphasis added). The Amendment to Application form, considered a part of the contract, see Policy, D.E. #28-3 at 23, provides: "CAUTION[:] Coverage does not become effective until this Amendment form is signed below and the full first premium received (if not already submitted)." Amendment, D.E. #28-5 at 16.

Plaintiff contends, and defendants do not dispute, that the Policy was issued "as other than applied for," in that plaintiff executed an Amendment to Application, changing the

premium amounts and beneficiary. Amendment, D.E. #28-5 at 16; <u>see also</u> Def. Reply Mem. at 1, 6 (noting no disputes as to material facts). Under the Policy's terms, a policy "other than applied for" comes into effect only if the applicant accepts the policy, pays the first premium, attests that the insured is in the "state of health and insurability represented in [the] application," and executes the Acknowledgment of Delivery form. Application, D.E. #28-4 at 9. The Amendment to Application form provides, more specifically, that coverage does not become effective until the form is executed and the first premium paid. Amendment, D.E. #28-5 at 16. The Acknowledgment of Delivery form, the Amendment to Application, and the Supplemental Statement attesting to Erno Altman's health and insurability were all executed on April 29, 2008. <u>See</u> <u>id</u>.; Acknowledgment of Delivery, D.E. #28-5 at 18; Supplemental Statement, D.E. #28-5 at 20. The first premium was paid by a check bearing the same date. <u>See</u> Check, D.E. #28-5 at 31. The Policy provides that the Policy Date "will never be the 29th, 30th, or 31st of any month." Policy #28-3 at 10. Accordingly, the Data Pages sent after the Policy came into effect bear a Policy Date of May 1, 2008; <u>see</u> Pl. Data Pages, D.E. #28-3 at 5, consistent with the Effective Date, <u>see</u> Policy, D.E. #28-3 at 10, and thus within the statutory contestability period. <u>See</u> N.Y. Ins. L. § 3203(a)(3).

Defendants do not dispute any of plaintiff's factual contentions concerning the timing of the Application; indeed, defendants contend (and the Court concurs) that there are no disputes as to any material facts germane to this motion. Def. Reply Mem. at 1, 6. Rather, defendants argue that the terms of the Policy preclude consideration of the later-issued Data Pages bearing the May 1, 2008 Policy Date. Def. Mem. at 9-10. As discussed above, this argument is

contradicted by the Policy's integration clause.[11]  Under the terms of the Policy, and in light of

plaintiff's uncontroverted evidence as to the timing of the Amendment to Application, the

Policy Date is May 1, 2008, rendering this lawsuit timely.

Defendants contend that the May 1 Data Pages must be excluded because they are not

signed by one of plaintiff's officers.  Def. Mem. at 10.  The Policy provides: "This policy may

be altered by mutual agreement, but any alterations must be in writing and signed by one of

Our corporate officers.  No one else, including the agent, may change the contract or waive

any provisions."  Policy, D.E. #28-3 at 23.  However, the signature requirement applies to

"alter[ations] by mutual agreement," id., not to adjustments pursuant to the terms of the Policy

as contemplated elsewhere in the contract.  See id. at 6.

On the record before the Court, the April 29, 2010 filing of this lawsuit was timely in

light of the May 1, 2008 Policy Date.  Consequently plaintiff's claims are not barred by the

incontestability clause, and defendants' motion for summary judgment should be denied.[12]

---

[11]  *See* discussion *supra* pp. 16-20.

[12] As an alternative ground for denying defendants' motion, plaintiff argues that defendants
should be equitably estopped from asserting an incontestability period beginning April 17,
2008 because defendants accepted the May 1, 2008 Policy Date and paid no premiums for the
period prior to May 1, 2008.  Pl. Mem. at 23-25.  The Court need not reach this ground, as
the record before it shows that May 1, 2008 is the actual Policy Date.  In any event, plaintiff
has not articulated any factual basis that would justify an equitable exception to the
incontestability period.  "Equitable estoppel is 'imposed by law in the interest of fairness to
prevent the enforcement of rights which would work fraud or injustice upon the person against
whom enforcement is sought and who, in justifiable reliance upon the opposing party's words
or conduct, has been misled into acting upon the belief that such enforcement would not be
sought.'"  Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996) (quoting
Nassau Trust Co. v. Montrose Concrete Prods. Corp., 56 N.Y.2d 175, 184 (1982)).  In the
analogous context of statutes of limitation, New York law provides that "the doctrines of
equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense
when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing

(continued...)

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that defendants' motion for summary judgment be denied.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Dora Lizette Irizarry on or before **October 7, 2011**.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a)(1), 72(b)(2); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to enter this Report and Recommendation into the ECF system.

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**September 20, 2011**

                    **ROANNE L. MANN**
                    **UNITED STATES MAGISTRATE JUDGE**

---

[12](…continued)
a timely action." Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotation omitted); see also Simcuski v. Saeli, 44 N.Y.2d 442, 448-49 (1978).  Plaintiff identifies no act of "fraud, misrepresentation[] or deception" calculated to cause plaintiff to delay in filing suit. Plaintiff cites two cases in which a court estopped an insured from asserting an incontestability defense where the insured had provided the insurer with false information, and/or withheld requested information, during the insurer's investigation of the claim, thereby preventing the insurer from commencing a rescission action within the contestable period.  See Spear v. Guardian Life Ins. Co. of Am., 493 N.Y.S.2d 322, 326 (1st Dep't 1985); Ferguson v. Unionmutual Stock Life Ins. Co. of Am., 501 F.Supp. 247, 249-50 (E.D. Ark. 1980), aff'd, 673 F.2d 254 (8th Cir. 1982).  Here, plaintiff alleges that defendants paid premiums based on a May 1, 2008 Policy Date; this is not the sort of "representation of fact" sufficient to lead to reasonable reliance and thus justify invocation of equitable estoppel.  Gen. Auth. for Supply Commodities, Cairo, Egypt v. Ins. Co. of N. Am., 951 F.Supp. 1097, 1112 (S.D.N.Y. 1997).